1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JAMES T. CASE,

11          Plaintiff,                    No. CIV S-11-2900 GGH P

12      vs.

13   BOARD OF PRISON TERMS, et al.,

14          Defendants.                    <u>ORDER</u>

15   _____/

16          Plaintiff is a state prisoner proceeding pro se and in forma pauperis with an action

17   filed pursuant to 42 U.S.C. § 1983.  By order filed February 15, 2012, plaintiff's complaint was

18   dismissed with leave to file an amended complaint and to file an in forma pauperis affidavit.

19   Plaintiff was subsequently granted an extension of time for his filings. <u>See</u> docket # 12.

20   Plaintiff has filed an amended complaint and completed an in forma pauperis application.

21   Plaintiff has consented to the jurisdiction of the undersigned.  <u>See</u> docket # 9.

22          Plaintiff has submitted a declaration that makes the showing required by 28

23   U.S.C. § 1915(a).  Accordingly, the request to proceed in forma pauperis will be granted.

24          Plaintiff is required to pay the statutory filing fee of $350.00 for this action.  28

25   U.S.C. §§ 1914(a), 1915(b)(1).  By this order, plaintiff will be assessed an initial partial filing fee

26   in accordance with the provisions of 28 U.S.C. § 1915(b)(1).  By separate order, the court will

1

direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court.  Thereafter, plaintiff will be obligated for monthly payments of twenty percent of the preceding month's income credited to plaintiff's prison trust account.  These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full.  28 U.S.C. § 1915(b)(2).

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke, 490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989); Franklin, 745 F.2d at 1227.

A complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007). "The pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."  Id., quoting 5 C. Wright & A. Miller, Federal Practice and Procedure 1216, pp. 235-235 (3d ed. 2004).   "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft

1   v. Iqbal, 566 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570, 127

2   S.Ct. 1955).  "A claim has facial plausibility when the plaintiff pleads factual content

3   that allows the court to draw the reasonable inference that the defendant is liable for the

4   misconduct alleged."  Id.

5          In reviewing a complaint under this standard, the court must accept as true the

6   allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S.

7   738, 740, 96 S.Ct. 1848 (1976), construe the pleading in the light most favorable to the plaintiff,

8   and resolve all doubts in the plaintiff's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct.

9   1843 (1969).

10          Plaintiff's original filing, transferred from the Northern District of California,

11   was dismissed because, inter alia, it was unclear whether he sought to proceed on a civil rights

12   complaint or a habeas corpus petition.  Plaintiff was instructed to file an amended civil rights

13   complaint and, if he sought to file a habeas corpus petition, to file a separate action.  See Order,

14   filed on 2/15/12 (dkt # 10).

15          In his amended complaint, plaintiff has failed to sufficiently cure the defects of his

16   original filing.  He lists the following as defendants: Christine Brunger, RN at California State

17   Prison-Solano (CSP-Sol); Warden Swarthout; Lisa Austin; Dr. Lipson; Dr. M. Capline.  Plaintiff

18   contends that on 4/17/11, he wanted to see a doctor for blurry vision and migraine headaches, but

19   was seen instead by an unidentified MTA who provided plaintiff with a pair of reading glasses

20   (for which he was charged $9.00), but who said the doctor was too busy to see him and was

21   otherwise not particularly sympathetic to plaintiff's symptoms.  Plaintiff put in to see a doctor

22   and on 5/3/11 was seen by an RN (identified as Nurse B–possibly, defendant Brunger).  He

23   showed this RN blood on his pillow case, saying that he had migraines and blood had been

24   leaking from both of his ears.  On 6/7/11, plaintiff (apparently again) saw Nurse B, told her he

25   would not "shut up" until he was seen by a doctor; she was "snotty and acted put out" and still

26   refused to let plaintiff see a doctor.  On 6/14/11, he nevertheless saw defendant Dr. Lipson who

3

1  said he found nothing wrong.  Plaintiff claims that he still has not seen an eye doctor, he still has

2  migraine headaches for which he has, apparently, only very recently received aspirin and his back

3  still hurts, although his ears have "quit leaking."  Plaintiff seeks both money (and, possibly,

4  punitive) damages and injunctive relief in the form of an exam by an "eye doctor," as well as a

5  different doctor for his back.  Amended Complaint (AC), pp. 2-4.

6          Plaintiff begins his amended complaint by stating that upon filing the instant

7  amended complaint, he will be transferred and the California Department of Corrections and

8  Rehabilitation (CDCR) will say the issue has been rendered moot.  It does appear from plaintiff's

9  latest filing that, although his claims concern events at CSP-Sol, he has since been transferred to

10  Jamestown (Sierra Conservation Center), which the Clerk of the Court has not yet noted in the

11  case docket.  See dkt # 18.  Plaintiff appended a letter to his amended complaint, directed to the

12  undersigned, wherein plaintiff complains that CSP-Sol "is the most corrupt prison" he has been

13  in during the past 28 years of his incarceration, averring that the 602 he filed related to the claims

14  of this case is located in his property which he has been unsuccessful in retrieving while he is in

15  administrative segregation for his own safety.  AC, p. 5.  Plaintiff subsequently filed a copy of a

16  602 grievance filed on 5/15/11 regarding a portion of his allegations in the instant action, as well

17  as a first level appeal response, dated 6/20/11, and a copy of a health services request, filed on

18  4/29/11.  Dkt # 17.  In another filing, plaintiff appears to be saying that he would prefer to be

19  transferred to Jamestown, averring he never intends to be returned to CSP-Sol, speaking about

20  having contracted valley fever at Avenal State Prison and about his inhaler and Cpap device

21  which Cpap at night helps him breathe but is noisy to cellmates; he references his single cell

22  status which he wants to retain and also talks about his mother being on kidney dialysis and how

23  he has "asked for a hardship transfer to anywhere in Northern California" (dkt # 15) – none of

24  which appears to have anything to do with the gravamen of his amended complaint.

25          In order to state a § 1983 claim for violation of the Eighth Amendment based on

26  inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence

4

1  deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct.

2  285, 292 (1976).  To prevail, plaintiff must show both that his medical needs were objectively

3  serious, and that defendants possessed a sufficiently culpable state of mind.  Wilson v. Seiter,

4  501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir.

5  1992) (on remand).  The requisite state of mind for a medical claim is "deliberate indifference."

6  Hudson v. McMillian, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

7              A serious medical need exists if the failure to treat a prisoner's condition could

8  result in further significant injury or the unnecessary and wanton infliction of pain.  Indications

9  that a prisoner has a serious need for medical treatment are the following:  the existence of an

10  injury that a reasonable doctor or patient would find important and worthy of comment or

11  treatment; the presence of a medical condition that significantly affects an individual's daily

12  activities; or the existence of chronic and substantial pain.  See, e.g., Wood v. Housewright, 900

13  F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01

14  (9th Cir. 1989).  McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other

15  grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

16              In Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court

17  defined a very strict standard which a plaintiff must meet in order to establish "deliberate

18  indifference."  Of course, negligence is insufficient.  Farmer, 511 U.S. at 835, 114 S. Ct. at 1978.

19  However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm

20  which is so obvious that it should be known) is insufficient.  Id. at 836-37, 114 S. Ct. at 1979.

21  Neither is it sufficient that a reasonable person would have known of the risk or that a defendant

22  should have known of the risk.  Id. at 842, 114 S. Ct. at 1981.

23              A prison official acts with "deliberate indifference ... only if the
               [prison official] knows of and disregards an excessive risk to
24              inmate health and safety." Gibson v. County of Washoe, Nevada,
               290 F.3d 1175, 1187 (9th Cir.2002) (citation and internal quotation
25              marks omitted).  Under this standard, the prison official must not
               only "be aware of facts from which the inference could be drawn
26              that a substantial risk of serious harm exists," but that person "must

1   also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837,
2   114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "If a [prison official]
    should have been aware of the risk, but was not, then the [official]
    has not violated the Eighth Amendment, no matter how severe the
3   risk." Gibson, 290 F.3d at 1188 (citation omitted). FN4 This
    "subjective approach" focuses only "on what a defendant's mental
4   attitude actually was." Farmer, 511 U.S. at 839, 114 S.Ct. 1970.
    "Mere negligence in diagnosing or treating a medical condition,
5   without more, does not violate a prisoner's Eighth Amendment
    rights." McGuckin, 974 F.2d at 1059 (alteration and citation
6   omitted).

7           FN4. In a recent case, we recognized that
            "deliberate indifference to medical needs may be
8           shown by circumstantial evidence when the facts are
            sufficient to demonstrate that a defendant actually
9           knew of a risk of harm." Lolli v. County of Orange,
            351 F.3d 410, 421 (9th Cir.2003) (citations
10          omitted); see also Gibson, 290 F.3d at 1197
            (acknowledging that a plaintiff may demonstrate
11          that officers "must have known" of a risk of harm
            by showing the obvious and extreme nature of a
12          detainee's abnormal behavior). []

13  Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004).

14          Also significant to the analysis is the well established principle that mere

15  differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth

16  Amendment violation. Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon,

17  662 F.2d 1337, 1344 (9th Cir. 1981).

18          Moreover, a physician need not fail to treat an inmate altogether in order to violate

19  that inmate's Eighth Amendment rights. Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir.

20  1989). A failure to competently treat a serious medical condition, even if some treatment is

21  prescribed, may constitute deliberate indifference in a particular case. Id.

22          Additionally, mere delay in medical treatment without more is insufficient to state

23  a claim of deliberate medical indifference. Shapley v. Nevada Bd. of State Prison Com'rs, 766

24  F.2d 404, 408 (9th Cir. 1985). Although the delay in medical treatment must be harmful, there is

25  no requirement that the delay cause "substantial" harm. McGuckin, 974 F.2d at 1060, citing

26  Wood v. Housewright, 900 F.2d 1332, 1339-1340 (9th Cir. 1990) and Hudson, 112 S. Ct. at 998-

1    1000.  A finding that an inmate was seriously harmed by the defendant's action or inaction tends

2    to provide additional support for a claim of deliberate indifference; however, it does not end the

3    inquiry.  McGuckin, 974 F.2d 1050, 1060 (9th Cir. 1992).  In summary, "the more serious the

4    medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those

5    needs, the more likely it is that a plaintiff has established deliberate indifference on the part of

6    the defendant."  McGuckin, 974 F.2d at 1061.

7            Superimposed on these Eighth Amendment standards is the fact that in cases

8    involving complex medical issues where plaintiff contests the type of treatment he received,

9    expert opinion will almost always be necessary to establish the necessary level of deliberate

10   indifference.  Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988).  Thus, although there

11   may be subsidiary issues of fact in dispute, unless plaintiff can provide expert evidence that the

12   treatment he received equated with deliberate indifference thereby creating a material issue of

13   fact, summary judgment should be entered for defendants.  The dispositive question is ultimately

14   not what was the most appropriate course of treatment for plaintiff, but whether the failure to

15   timely give a certain type of treatment was, in essence, criminally reckless.

16           Plaintiff has failed to adequately allege a violation of his Eighth Amendment

17   rights in his amended complaint.  In the first place, he does not link at least two named

18   defendants to any allegations whatever.  In the second place, he does not adequately identify the

19   defendant he refers to as "Nurse B" within his allegations, and even had he done so, his claims

20   against this individual simply do not rise to the level of an Eighth Amendment violation.   At

21   most, she delayed his seeing a doctor, who, according to plaintiff, when he did see one, could

22   find nothing wrong with him.  As for defendant Dr. Lipson, the allegation against him is simply

23   that he did not find what was causing plaintiff's complaints.  Plaintiff needs to fully identify the

24   MTA and the RN he believes provided him with inadequate medical care and to make clear that

25   he suffers from a serious medical condition to which they were deliberately indifferent.  He must

26   also allege how defendant Dr. Lipson's actions or inactions rose to the level of an Eighth

1  Amendment violation.   Moreover, although it is not entirely clear, it appears that plaintiff may

2  have failed to administratively exhaust his claims through the final level, which defendants,

3  should any ultimately be served, may raise as an affirmative defense.[1]   The Prison Litigation

4  Reform Act (PLRA), 42 U.S.C. § 1997e(a) provides that, "[n]o action shall be brought with

5  respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner

6  confined in any jail, prison, or other correctional facility until such administrative remedies as are

7  available are exhausted."  Inmates seeking injunctive relief must exhaust administrative

8  remedies.  Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999).  In Booth v. Churner, 532 U.S.

9  731,741, 121 S. Ct. 1819, 1825 (2001), the Supreme Court held that inmates must exhaust

10  administrative remedies, regardless of the relief offered through administrative procedures.

11  Therefore, inmates seeking money damages must also completely exhaust their administrative

12  remedies.  Booth v. Churner, 532 U.S. 731, 121 S. Ct. 1819 (inmates seeking money damages are

13  required to exhaust administrative remedies even where the grievance process does not permit

14  awards of money damages).  Finally, plaintiff has now transferred to SCC at Jamestown, which is

15  located in Tuolumne County.  Should he have complaints regarding his treatment there, any civil

16  rights action regarding Jamestown officials should be filed in the Fresno Division of the United

17  States District Court for the Eastern District of California.  See Local Rule 120(d).  The instant

18  amended complaint will be dismissed but plaintiff will be granted one further opportunity to

19  amend as to his allegations against the CSP-Sol defendants.

20        If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the

21  conditions complained of have resulted in a deprivation of plaintiff's constitutional rights.  See

22

23  [1] The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) provides that, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any

24  other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Inmates seeking injunctive relief

25  and/or money damages must exhaust administrative remedies.  Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999); Booth v. Churner, 532 U.S. 731,741, 121 S. Ct. 1819, 1825 (2001)(inmates

26  seeking money damages are required to exhaust administrative remedies even where the grievance process does not permit awards of money damages).

1   Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  Also, the complaint must allege in specific terms

2   how each named defendant is involved.  There can be no liability under 42 U.S.C. § 1983 unless

3   there is some affirmative link or connection between a defendant's actions and the claimed

4   deprivation.  Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598 (1976); May v. Enomoto, 633 F.2d

5   164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Furthermore,

6   vague and conclusory allegations of official participation in civil rights violations are not

7   sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

8          In addition, plaintiff is informed that the court cannot refer to a prior pleading in

9   order to make plaintiff's amended complaint complete.  Local Rule 220 requires that an amended

10  complaint be complete in itself without reference to any prior pleading.  This is because, as a

11  general rule, an amended complaint supersedes the original complaint.  See Loux v. Rhay, 375

12  F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files an amended complaint, the original pleading no

13  longer serves any function in the case.  Therefore, in an amended complaint, as in an original

14  complaint, each claim and the involvement of each defendant must be sufficiently alleged.

15         In accordance with the above, IT IS HEREBY ORDERED that:

16         1.  The Clerk of the Court is directed to update plaintiff's current address by

17  reference to docket # 18.

18         2.  Plaintiff's request for leave to proceed in forma pauperis is granted.

19         3.  Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action.

20  Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C.

21  § 1915(b)(1).  All fees shall be collected and paid in accordance with this court's order to the

22  Director of the California Department of Corrections and Rehabilitation filed concurrently

23  herewith.

24         4.  The amended complaint is dismissed for the reasons discussed above, with

25  leave to file a second amended complaint within twenty-eight days from the date of service of

26  \\\\\

1   this order.  Failure to file a second amended complaint will result in a recommendation that the

2   action be dismissed.

3   DATED: June 28, 2012

4                                            /s/ Gregory G. Hollows
                                    UNITED STATES MAGISTRATE JUDGE

5   GGH:009
    case2900.amd

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26